IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TARA G.,[1]

                    Plaintiff,

      v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                    Defendant.

Case No. 6:24-cv-01508-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

Tara G. ("Plaintiff") filed this appeal challenging the Commissioner of Social Security's ("Commissioner") denial of her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). For the reasons explained below, the Court affirms the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence in the record.

///

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case.

PAGE 1 – OPINION AND ORDER

## STANDARD OF REVIEW

"As with other agency decisions, federal court review of social security determinations is limited." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). That is because "[f]or highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency." *Id.* (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 621 (1966)). Adhering to this principle, courts "follow three important rules" in reviewing social security determinations. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

First, courts "leave it to the [agency] to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Id.* (quoting *Treichler*, 775 F.3d at 1098). Second, courts "will 'disturb the Commissioner's decision to deny benefits only if it is not supported by substantial evidence or is based on legal error.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098). Third, if the agency "'commits legal error, [courts] uphold the decision where that error is harmless,' meaning that 'it is inconsequential to the ultimate nondisability determination,' or that, despite the legal error, 'the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098); *see also Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) ("And even where this modest [substantial evidence] burden is not met, [courts] will not reverse an [agency] decision where the error was harmless." (citing *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by regulation as recognized in Farlow v. Kijakazi*, 53 F.4th 485, 487 (9th Cir. 2022))).

///

# BACKGROUND

## I.    PLAINTIFF'S APPLICATION

Plaintiff was thirty-three years old on June 30, 2020, the alleged disability onset date.[2] (Tr. 80.) In her application, Plaintiff alleged disability due to anxiety, aches and pains, chronic migraines, anti-social anxiety disorder, "comprehensive deficiency," and pain in her back and hip, and stated "sometimes I cannot control what comes out of my mouth, I break down." (*Id.*)

The Commissioner denied Plaintiff's application initially and upon reconsideration, and on May 19, 2023, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 86, 97-98, 119.) Plaintiff and a vocational expert ("VE") appeared and testified at an administrative hearing held before an ALJ on March 6, 2024. (*Id.* at 34-59.) On April 3, 2024, the ALJ issued a written decision denying Plaintiff's application. (*Id.* at 13-32.) On July 11, 2024, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (*Id.* at 1-7.) Plaintiff now seeks judicial review of that decision.

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five

---

[2] "[T]he earliest an SSI claimant can obtain benefits is the month after which [s]he filed h[er] application[.]" *Schiller v. Colvin*, No. 12-771-AA, 2013 WL 3874044, at *1 n.1 (D. Or. July 23, 2013) (citation omitted).

steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *See Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *See id.* at 954. The Commissioner bears the burden of proof at step five, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. *See Bustamante*, 262 F.3d at 954.

## III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 13-32.) At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since her application date. (*Id.* at 18.) At step two, the ALJ found that Plaintiff suffers from the following severe medically determinable impairments: posttraumatic stress disorder ("PTSD"), bipolar disorder, schizoaffective disorder, social anxiety disorder, and generalized anxiety disorder. (*Id.* at 19.) At step three, the ALJ determined that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (*Id.* at 19-21.)

The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, subject to these limitations: (1) Plaintiff can understand, remember, and carry out simple routine tasks and simple work-related decisions, (2)

Plaintiff can have occasional interactions with supervisors, coworkers, and the public, and (3) Plaintiff would be off task, in addition to normal breaks, up to five percent scattered throughout a normal eight-hour workday. (*Id.* at 21.)

At step four, the ALJ found that Plaintiff could not perform her past relevant work as a telemarketer. (*Id.* at 26.) At step five, the ALJ found that Plaintiff was not disabled because a significant number of jobs existed in the national economy that she could perform, including night cleaner, garment sorter, and racker. (*Id.* at 27-28.)

## DISCUSSION

Plaintiff argues on appeal that the ALJ (1) erred at step two by not finding that she suffered from any severe physical impairments, (2) erred at step three by not finding that her hypothyroidism, in combination with her mental impairments, equaled a listed impairment, (3) failed to provide specific, clear, and convincing reasons to discount her subjective symptom testimony, (4) improperly discounted the medical opinions of Amy Tatom, FNP ("Tatom"), Shari Engstrom M.D. ("Dr. Engstrom"), Keven Cuccaro, DO ("Dr. Cuccaro"), and Adriana Altvatter, MA, LPC ("Altvatter"), and (5) failed properly to address the lay witness testimony. (Pl.'s Opening Br. ("Pl.'s Br.") ECF No. 10; *see also* Def.'s Br., ECF No. 14; Pl.'s Reply, ECF No. 15.)

## I.    STEP TWO

At step two, the ALJ found that Plaintiff suffered from severe mental impairments (Tr. 19), but Plaintiff argues that the ALJ erred by finding that her medically determinable physical impairments were not severe. (*See* Pl.'s Br. at 3-4.)

### A.    Applicable Law

Step two of the sequential evaluation process is a de minimis procedural device used to screen out groundless disability claims. *See Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005)

("Step two, then, is 'a de minimis screening device [used] to dispose of groundless claims,' and an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is clearly established by medical evidence.'" (first citing *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); and then citing SSR 85-28, *available at* 1985 WL 56856)).

To proceed past step two in the sequential evaluation process, a claimant must provide evidence of one or more "severe" impairments which establish more than a minimal effect on the claimant's ability to perform basic work activities. *See* 20 C.F.R. § 404.1512 (describing the claimant's responsibility to submit evidence of the nature and severity of any impairments). An impairment is severe if it "significantly limits" the claimant's "physical or mental ability to do basic work activities[.]" *Id.* § 404.1520(c) ("If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled."). "[T]he ALJ must consider the 'combined effect' of all the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (citing 20 C.F.R. § 416.923).

"An impairment or combination of impairments is found 'not severe' and a finding of 'not disabled' is made at this step when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered[.]" SSR 85-28, *available at* 1985 WL 56856; *see also Webb*, 433 F.3d at 686 ("An impairment or combination of impairments may be found 'not severe *only* if the

evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work.'" (first quoting *Smolen*, 80 F.3d at 1290; and then citing *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988))).

"In determining a claimant's residual functional capacity, the ALJ must consider all of a claimant's medically determinable impairments, including those that are not severe." *Beno H. v. Comm'r Soc. Sec. Admin.*, No. 3:23-cv-01375-SB, 2024 WL 4818435, at *2 (D. Or. Nov. 18, 2024) (first quoting *Ghanim v. Colvin*, 763 F.3d 1154, 1166 (9th Cir. 2014); and then citing *Candy G. v. Comm'r, Soc. Sec. Admin.*, No. 3:23-cv-0007-MC, 2023 WL 8433169, at *3-4 (D. Or. Dec. 5, 2023)). As a result, even if an ALJ errs in evaluating the severity of an impairment at step two, any error is harmless if the ALJ resolves step two in the claimant's favor and considers all medically determinable impairments at later steps of the sequential evaluation process. *See Havens v. Kijakazi*, No. 21-35022, 2022 WL 2115109, at *1 (9th Cir. June 13, 2022) ("[E]ven if the [step-two] determination was in error, it was harmless because the ALJ considered these conditions among [the] claimed impairments in the overall [RFC] determination."); *Fowler v. Kijakazi*, No. 20-36016, 2021 WL 5823704, at *1 (9th Cir. Dec. 8, 2021) ("[A]ny error was harmless because the ALJ still resolved step two in [the claimant's] favor and considered all medically determinable impairments (severe and non-severe) at the later steps.") (citation omitted).

**B.    Analysis**

Plaintiff argues that the ALJ erred by failing to find at step two that her physical impairments were severe. (*See* Pl.'s Br. at 3-4.) The Court finds that even if the ALJ erred by not including Plaintiff's hypothyroidism or scoliosis as severe impairments at step two, any error was harmless because the ALJ resolved step two in Plaintiff's favor and addressed Plaintiff's

physical impairments in evaluating her RFC. (Tr. 19, 21-26; *see also* Pl.'s Br. at 1,

acknowledging that the ALJ's evaluation of Plaintiff's impairments "may not have been

reversible error at step two, pursuant to *Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir.

2017)"); *see also Buck*, 869 F.3d at 1049 ("[S]tep two was decided in [the claimant]'s favor after

both hearings. He could not possibly have been prejudiced. Any alleged error is therefore

harmless and cannot be the basis for a remand." (citing *Molina*, 674 F.3d at 1115)).

## II.    STEP THREE

Plaintiff argues that the ALJ erred at step three by not finding that her hypothyroidism, in

combination with her mental impairments, equaled a listed impairment. (*See* Pl.'s Br. at 16-19;

Pl.'s Reply at 6-9.)

### A.    Applicable Law

At step three of the sequential evaluation process, the ALJ must determine whether the

claimant's impairments meet or equal a listed impairment. *See Keyser*, 648 F.3d at 724. Plaintiff

bears the burden of proof at step three. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) ("It

is not unreasonable to require the claimant, who is in a better position to provide information

about his own medical condition, to do so.").

To meet a listing, an impairment "must meet *all* of the specified medical criteria."

*Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). "To equal a listed impairment, a claimant must

establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the

characteristics of a relevant listed impairment[.]" *Tackett*, 180 F.3d at 1099; *see also Sullivan*,

493 U.S. at 531 (to establish equivalency, the claimant "must present medical findings equal in

severity to all the criteria for the one most similar listed impairment") (citation omitted);

*Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (finding that listed impairments contain

"strict standards because they automatically end the five-step inquiry, before residual functional capacity is even considered").

"To show error in an ALJ's [s]tep [t]hree finding, a claimant bears the burden to 'specify which listing she believes she meets or equals,' and then 'set forth [] evidence which would support the diagnosis and findings of a listed impairment.'" *Daly v. Bisignano*, No. 24-4888, 2025 WL 3187349, at *1 (9th Cir. Nov. 14, 2025) (quoting *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005)).

### B.    Analysis

Plaintiff argues that the ALJ erred by not finding that the combination of Plaintiff's impairments medically equals a listed impairment. (*See* Pl.'s Br. at 16-19; Pl.'s Reply at 6-9.)

First, Plaintiff argues that "[t]he record is not sufficiently developed to know whether [she] is disabled at step [three] because the ALJ did not consider how interwoven her hypothyroidism is with her physical and mental impairments." (Pl.'s Br. at 17.) However, Plaintiff did not present a medical equivalency argument at the administrative level, and she bears the burden of proof to demonstrate that the combination of her impairments equaled a listed impairment. (*See* Pl.'s Reply at 7, acknowledging that Plaintiff did not explicitly present a medical equivalency argument at the administrative level but asserting that "the issue was raised implicitly by the evidence [Plaintiff] submitted"). The Ninth Circuit has clearly instructed that an ALJ is not required to address medical equivalency sua sponte, and thus the ALJ did not err in failing to do so here. *See Ford v. Saul*, 950 F.3d 1141, 1148-49 (9th Cir. 2020) ("Because the ALJ did not have an obligation to discuss medical equivalency sua sponte, the ALJ did not err in failing to do so." (citing *Burch*, 400 F.3d at 683)); *Burch*, 400 F.3d at 683 ("An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any

listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." (citing *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001))); *Vanderhoff v. Comm'r of Soc. Sec.*, No. 1:23-cv-01175-HBK, 2025 WL 32759, at *4 (E.D. Cal. Jan. 6, 2025) ("Plaintiff did not argue at the administrative level that she had any severe physical impairments, nor did she argue that a combination of physical and mental impairments equaled a listed impairment; to wit, no physical impairment was listed in her function report nor is any listed in her disability report, her attorney did not include any argument as such in the pre-hearing brief to the ALJ, she did not allege physical limitations at the hearing, and her request to review the decision to the Appeals Council did not make any argument regarding any physical impairment or any error at step three."); *Corralez v. Astrue*, No. CV 10-06272-JEM, 2011 WL 1812784, at *4-5 (C.D. Cal. May 12, 2011) (rejecting the claimant's argument that the ALJ's decision was "'devoid of an analysis' at step three" because "Plaintiff did not make any argument at the ALJ hearing that he met or equaled a listing" and "did not present any medical opinions that say he met or equaled a listing").

In addition, Plaintiff does not clearly present on appeal the listing which the combination of her impairments medically equals, nor explain how the medical evidence of record satisfies the detailed requirements of any listing. (*See* Pl.'s Br. at 17, suggesting Plaintiff qualifies for an equivalency listing for an endocrine disorder; *see id.* at 18, suggesting Plaintiff qualifies for an equivalency listing for a mental disorder). As a result, Plaintiff has not met her burden of establishing step three error on appeal.

## III.    SUBJECTIVE SYMPTOM TESTIMONY

Plaintiff argues that the ALJ erred by discounting her subjective symptom testimony. (*See* Pl.'s Br. at 19-22; Pl.'s Reply at 9-19.)

### A.    Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Ghanim*, 763 F.3d at 1163 (citation omitted).

### B.    Analysis

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 22, finding that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms"). The ALJ was therefore required to provide clear and convincing reasons for discounting Plaintiff's symptom testimony. *See Ghanim*, 763 F.3d at 1163. The Court concludes that the ALJ satisfied that standard here.

#### 1.    Plaintiff's Activities

Plaintiff argues that the ALJ erred by discounting her symptom testimony based on her activities of daily living. (*See* Pl.'s Br. at 19-22; Pl.'s Reply at 9-19.) The Court finds that the ALJ appropriately discounted Plaintiff's testimony as inconsistent with her activities of daily living, and the ALJ's findings were supported by substantial evidence in the record.

///

An ALJ may discount a claimant's symptom testimony based on activities that are incompatible with the claimant's testimony regarding the severity of her symptoms. *See Burrell v. Colvin*, 775 F.3d 1133, 1137-38 (9th Cir. 2014) (explaining that "[i]nconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination") (citation omitted); *Garrison*, 759 F.3d at 1016 (finding that a claimant's activities have "bearing on [his or her] credibility" if the reported "level of activity" is "inconsistent with [the claimant's] claimed limitations"). There must be a meaningful inconsistency between the claimant's daily activities and symptom testimony to discount the testimony. *See Harris v. Kijakazi*, No. 21-35136, 2022 WL 1262011, at *1 (9th Cir. Apr. 28, 2022) (holding that the ALJ committed harmful error in discounting the claimant's symptom testimony and explaining that the claimant's "limited daily activities were not meaningfully inconsistent with her symptom testimony") (citation omitted).

Here, the ALJ addressed Plaintiff's testimony regarding her mental impairments but discounted Plaintiff's reported symptoms on the ground that Plaintiff "admitted to independence in daily activities that are not consistent with disabling mental impairments[.]" (Tr. 25.) Substantial evidence in the record supports the activities the ALJ cited. (*See id.*, "The claimant testified that she . . . is able to raise young children, attend to her personal care, perform household chores, drive when needed, prepare meals for one to two hours, and shop in stores one or two times per week for one to two hours, which is not suggestive of disabling limitations[.]")

Plaintiff argues that "these generic, enumerated activities [have] no specific relevance to the credibility of any specific aspect of her testimony." (Pl.'s Reply at 16.) The Court disagrees. While "transferability of daily activities to the work setting is a valid reason to discredit [a p]laintiff's testimony . . . it is equally reasonable for [an] ALJ to [to] rely on the extent that a

[p]laintiff's daily activities 'contradict claims of a totally debilitating impairment.'" *Cook v. Comm'r Soc. Sec. Admin.*, No. 2:16-cv-00061-FVS, 2017 WL 1479430, at *6 (E.D. Wash. Mar. 29, 2017)) (citing *Molina*, 674 F.3d at 1113), *report and recommendation adopted*, 2017 WL 1455008 (E.D. Wash. Apr. 21, 2017). Here, the ALJ appropriately concluded that Plaintiff's activities, including those outside of her home, contradicted her alleged "inability to function independently or communicate with others due to anxiety."[3] (Tr. 25); *see also Elizabeth D. v. Kijakazi*, No. 6:20-cv-02079-SI, 2022 WL 986482, at *7 (D. Or. Apr. 1, 2022) ("[Plaintiff's] activities contradict Plaintiff's claims that her anxiety when interacting with others or among crowds was debilitating, and thus constitute a clear and convincing reason to discount Plaintiff's testimony as to her mental limitations.").

For these reasons, the Court finds that the ALJ did not err by discounting Plaintiff's symptom testimony on the ground that her daily activities contradicted her claims of total disability.

## 2.    Objective Medical Evidence

The Court finds that the ALJ also appropriately discounted Plaintiff's symptom testimony as inconsistent with the medical record and the ALJ's finding was supported by substantial evidence in the record.

An ALJ may discount a claimant's symptom testimony based on objective medical evidence in the record. *See Young v. Saul*, 845 F. App'x 518, 520 (9th Cir. 2021) ("An ALJ may consider inconsistency between a claimant's symptom testimony and the objective medical evidence in the record in determining whether to discount the claimant's symptom testimony."

---

[3] The Court finds that contrary to Plaintiff's argument (*see* Pl.'s Br. at 21-22), the ALJ's explanation satisfied the specificity requirement set forth in *Brown-Hunter*, 806 F.3d at 494.

(first citing 20 C.F.R. § 404.1529(c)(1)-(2); and then citing *Molina*, 674 F.3d at 1113)); *Valdez v. Berryhill*, 746 F. App'x 676, 677 (9th Cir. 2018) ("[T]he ALJ may properly include lack of supporting medical evidence in the reasons to discredit claimant testimony as long as it is not the only reason[.]" (citing *Burch*, 400 F.3d at 680)); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (affirming the ALJ's discounting of the claimant's testimony, in part, because it conflicted with the objective medical evidence).

With respect to Plaintiff's testimony regarding her physical limitations, the ALJ cited medical records reflecting that imaging of Plaintiff's spine revealed only mild findings and no instability or other abnormalities. (*Id*. at 19, citing *id.* at 459, 505.) Further, the ALJ cited a musculoskeletal exam showing that Plaintiff did not require a cane or other assistive device and noting that Plaintiff reported she could walk up to four miles. (*Id*., citing *id.* at 457, 512, 517, 723, 732; *see also id.* at 24, noting that agency consultative psychological examiner Douglas Smyth PhD ("Dr. Smyth") reported that Plaintiff "ambulated without the use of an assistive device to attend to her children during the exam"). The same musculoskeletal exam showed that Plaintiff had normal muscle strength, reflexes, and a negative straight leg test, and notes reflected that medication relieved her reported aches and pains. (*Id*., citing *id.* at 510, 513.) The ALJ also addressed Plaintiff's hypothyroidism symptoms, citing medical records demonstrating that her symptoms improved with medication when she was compliant. (*Id*. at 551, 732, 735.)

The ALJ also addressed Plaintiff's testimony regarding mental impairments and cited specific medical records undermining the severity of Plaintiff's reported symptoms. For example, despite her complaints of severe anxiety, Plaintiff declined anxiety medication and reported recent improvement in her anxiety symptoms. (*See, e.g.*, Tr. 23, "Although her counselor wrote, 'Anxiety has been addressed with no success at this point in individual

counseling and case management services', the claimant continued to decline medication for her symptoms. Further, the claimant reported that her mental health is better than it has been in many years"; *id.*, "In September and October 2022, the claimant attended counseling sessions and reported some improvement in anxiety due to having a new cat"; *id.* at 24, noting that counseling records reflected that Plaintiff "consistently reported 10 out of 10 anxiety" but that "is not supported by the level of conservative treatment she receives"). Further, primary care treatment records reflected that Plaintiff presented as pleasant with normal mental status exams and that most of her counseling sessions revolved around case management assistance. (*See id.*, "Counseling records through June 2023 consistently show complaints of anxiety and difficulty leaving her home but most sessions revolved around case management assistance such as helping the claimant utilize Bluetooth and her phone, bringing her items from a food pantry, transporting her to Wal-Mart to shop for basic household goods, obtaining a headset for listening to TikTok, and providing empathetic listening with cognitive behavioral therapy, which is not suggestive of disabling symptoms of anxiety such as inpatient hospitalizations or emergency treatment for acute psychiatric symptoms"; *see also id.*, noting a counselor's report that Plaintiff "was able to successfully navigate the outing with minimal reported distress"); *see also Grace G. v. Kijakazi*, No. 20-cv-1233-AJB-DEB, 2021 WL 6126396, at *7 (S.D. Cal. Dec. 28, 2021) ("The ALJ, therefore, properly considered Plaintiff's 'presentation and clinical observations at appointments' to discount Plaintiff's subjective symptom testimony." (simplified) (citing *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008)).

Further, the ALJ highlighted a pattern of Plaintiff seeking treatment only for the purpose of applying for disability benefits (*see* Tr. 23, citing records from April and May 2022 in which

providers noted the reason for Plaintiff's visits was her SSI application), and a pattern of missed appointments (*see id.*, noting missed follow-up appointments in late 2022).

Finally, the ALJ provided a detailed summary of Dr. Smyth's consultative psychological examination and concluded that Dr. Smyth's "mental status exam . . . is consistent with [Plaintiff]'s level of independent functioning both in and outside of her home." (*Id.* at 24.) The ALJ also highlighted Dr. Smyth's observations that Plaintiff "was vague in describing her problems and symptoms and that there were discrepancies noted when contrasting her current complaints to those reported in the chart notes and medical records that he reviewed." (*Id.*, listing the discrepancies).

The Court finds that these inconsistencies between Plaintiff's reported symptoms and the objective medical evidence was an appropriate reason for the ALJ to discount Plaintiff's testimony and supported by substantial evidence in the record. For all of these reasons, the Court concludes that the ALJ did not commit harmful error in evaluating Plaintiff's symptom testimony.

## IV.    MEDICAL OPINION EVIDENCE

Plaintiff argues that substantial evidence does not support the ALJ's explanation for discounting the medical opinions of Tatom,[4] Dr. Engstrom, Dr. Cuccaro, or Altvatter.

---

[4] The Court does not address Plaintiff's argument with respect to Tatom because Tatom did not provide a medical opinion. *See* 20 C.F.R. § 416.927(a)(1) (defining "medical opinions" as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions"); *Seth F.L. v. Kijakazi*, No. CV 21-106-BLG-KLD, 2023 WL 2712438, at *9 (D. Mont. Mar. 30, 2023) ("Treatment notes generally do not constitute medical opinions that the ALJ is required to weigh." (citing 20 C.F.R. § 416.927(a)(1))); (*see also* Tr. 437-62, 463-506, 531-95, 717-45, reflecting Tatom's treatment notes only.)

### A.     Applicable Law

"In January 2017, the Social Security Administration issued revised regulations for evaluating medical opinions relating to claims filed on or after March 27, 2017." *Cross v. O'Malley*, 89 F.4th 1211, 1214 (9th Cir. 2024) (citation omitted). The revised "regulations provide that ALJs will no longer 'defer or give any specific evidentiary weight' to any medical opinions." *Id.* (quoting 20 C.F.R. § 416.920c(a)). Instead, "ALJ[s] must assess the persuasiveness of each medical opinion after considering specified factors." *Stiffler v. O'Malley*, 102 F.4th 1102, 1106 (9th Cir. 2024) (first citing *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022); and then citing 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(b))).

Specifically, the revised "regulations require an ALJ to discuss the supportability and consistency of medical evidence—the factors the agency has historically found to be the most important in evaluating medical opinions—while allowing for discussion of other factors listed in paragraphs (c)(3) through (c)(5), as appropriate." *Cross*, 89 F.4th at 1215 (citing 20 C.F.R. § 416.920c(a)); *see also Woods*, 32 F.4th at 791 ("'The most important factors' that the agency considers when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency.'" (quoting 20 C.F.R. § 404.1520c(a))). "Supportability focuses on whether 'a medical source supports a medical opinion by explaining the relevant objective medical evidence.'" *Stiffler*, 102 F.4th at 1106 (quoting *Woods*, 32 F.4th at 791-92); *see also Kitchen v. Kijakazi*, 82 F.4th 732, 740 (9th Cir. 2023) ("Supportability concerns how 'a medical source supports a medical opinion' with relevant evidence[.]" (quoting *Woods*, 32 F.4th at 791-92)). "Consistency means the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources[.]" *Stiffler*, 102 F.4th at 1106 (quoting *Woods*, 32 F.4th at 792).

In addition to supportability and consistency, "[a]n ALJ may discuss other factors [listed in paragraphs (c)(3) through (c)(5)], such as the medical source's 'relationship with the claimant' or 'specialization,' but generally has no obligation to do so." *Cross*, 89 F.4th at 1214 (citing 20 C.F.R. § 416.920c(b)(2)). If, however, an "ALJ finds two or more contradictory medical opinions 'both equally well-supported . . . and consistent with the record[,]'" "the regulations mandate discussion of these other factors[.]" *Id.* at 1214-15 (quoting 20 C.F.R. § 416.920c(b)(3), (c)(3)-(5)).

A district court reviews the ALJ's evaluation of a medical opinion for substantial evidence. *See Woods*, 32 F.4th at 787 ("Now, [under the new regulations,] an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence."); *id.* at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."); *Metcalf v. Kijakazi*, No. 22-35201, 2022 WL 17592194, at *1 (9th Cir. Dec. 13, 2022) (observing that "under the revised regulations . . . , the ALJ's evaluation of a medical opinion is reviewed for substantial evidence" (citing *Woods*, 32 F.4th at 789)).

### B.    Analysis

#### 1.    Drs. Engstrom and Cuccaro

The Court finds that the ALJ did not err in evaluating the state agency medical consultants' opinions from Drs. Engstrom and Cuccaro.

Dr. Engstrom provided a medical opinion dated March 25, 2023. (Tr. 510-18.) Dr. Engstrom assessed Plaintiff as able to sit for three hours, stand for two hours, and walk for two hours in an eight-hour workday; lift five pounds frequently and ten pounds occasionally; carry

two-and-a-half pounds frequently and ten pounds occasionally; able to frequently reach, handle, feel, and grasp; and occasionally bend but never squat. (*Id*. at 517.) Dr. Engstrom assessed no environmental, visual, or communication limits, and noted that Plaintiff did not require an assistive device. (*Id*.) On reconsideration, Dr. Cuccaro found that Plaintiff has severe physical impairments that limit her to a medium level of exertion but that Dr. Engstrom's proffered limitations were "an overestimate of [Plaintiff's] reasonable limitations." (Tr. 94-95.)

The ALJ found Dr. Engstrom's opinion unpersuasive because "there is no supporting objective medical evidence of severe medically determinable physical impairments in the record that would support the level of impairment alleged nor the overstated exertional, postural, and manipulative limitations cited in her report." (*Id*. at 25.) The ALJ similarly found Dr. Cuccaro's opinion to be "unpersuasive because the record in its totality does not support a finding of any severe physical medically determinable impairments as imaging is mild and the claimant has received little medical treatment over the relevant period." (*Id.* at 26.)

Plaintiff argues that the ALJ erred in his evaluation of the state agency medical consultants' opinions by not "discuss[ing] 'supportability' or 'consistency.'" (Pl.'s Br. at 9-12.) The Court finds that the ALJ properly weighed the medical opinions by addressing their supportability and consistency with the record (*see* Tr. 25-26), despite not using those specific words.[5] *See Daniel L. v. Comm'r, Soc. Sec. Admin*., No. 6:24-cv-365-IM, 2025 WL 315005, at *2 (D. Or. Jan. 28, 2025) ("The ALJ properly weighed the medical opinion evidence because he

---

[5] With respect to consistency, Plaintiff argues that Dr. Engstrom's opinion on Plaintiff's physical exertional limitations is consistent with Dr. Cuccaro's opinion (*see* Pl.'s Br. at 11-12), but acknowledges that Dr. Cuccaro rejected Dr. Engstrom's opinion as "not persuasive because it is an overestimate of reasonable limitations given [Plaintiff's] [medically determinable impairments]." (Tr. 94.) Thus, even Dr. Cuccaro disagreed with Dr. Engstrom's proffered extreme functional limitations. (*Id*.)

sufficiently addressed the supportability and consistency of [the medical] opinion. The ALJ's

analysis addressed both factors, even though he did not use those specific words.").

Plaintiff also argues that substantial evidence did not support the ALJ's rationale for

discounting the opinions, specifically with respect to the ALJ's evaluation of Plaintiff's

hypothyroidism symptoms. (*See* Pl.'s Br. at 10-11.) However, Dr. Engstrom did not opine that

Plaintiff's functional limitations were the result of her hypothyroidism and Plaintiff merely

speculates that her hypothyroidism "may" have accounted for Dr. Engstrom's assessed

limitations. (*See* Pl.'s Br. at 11, "Dr. Engstrom also was aware of [Plaintiff]'s history of

hypothyroidism, which, as discussed above, may account for many, if not most, of her symptoms

and limitations.")

The Court finds that the ALJ's reasons for discounting Drs. Engstrom's and Cuccaro's

opinions—as unsupported by examination findings or the medical record (Tr. 25-26)—were

supported by substantial evidence in the record. (*See, e.g.*, *id.* at 510-11, reflecting that Plaintiff's

physical complaints were relieved by medication, a heated blanket, and hot baths; *id.* at 517-18

(same); *id.* at 512, 517, noting that Plaintiff did not require an assistive device; *id.* at 512-16,

reflecting largely normal findings).

For these reasons, the Court finds that the ALJ did not commit harmful legal error in

discounting the opinions of Drs. Engstrom and Cuccaro.

### 2.      Adriana Altvatter, MA, LPC

The Court also finds that the ALJ did not err in discounting Altvatter's opinion.

Altvatter provided a medical source statement dated March 1, 2024. (*Id.* at 715.) Altvatter

was asked to provide ratings of Plaintiff's mental ability in the four areas of understanding and

memory, sustained concentration and persistence, social interaction, and adaptation. (*Id.* at 712-

14.) Altvatter rated Plaintiff as category IV in several abilities, which corresponds to precluding performance for thirty percent of an eight-hour workday. (*Id*.) Altvatter opined that Plaintiff would miss five or more days of work per month and noted that she based her opinion only on "comments [Plaintiff] expressed in session." (*Id*. at 714-15.)

The ALJ found Altvatter's opinion unpersuasive because the assessed limitations were unsupported by Plaintiff's daily activities and inconsistent with her ability to use "standard electronic device programs" and a debit card and self-checkout at the grocery store. (*Id*. at 26, citing *id.* at 256-69, 520-30.) The ALJ also found Altvatter's opinion that Plaintiff would miss five or more days of work per month and would be precluded from asking simple questions at work and interacting with the public, supervisors, and coworkers for thirty percent of the workday unpersuasive "because the claimant is able to adequately engage with counselors and case management services to request assistance in obtaining access to household items, clothing, and food when she is motivated." (*Id*. at 26, citing *id.* at 675-711.) Finally, the ALJ found Altvatter's opinion unpersuasive because it was based solely on "comments expressed in session" and no objective clinical findings. (*Id*., citing *id.* at 714.)

Plaintiff argues that the ALJ erred in evaluating Altvatter's opinion because Altvatter was asked to provide an assessment of Plaintiff's "maximum remaining ability to perform sustained work on a regular and continuing basis," rather than on her "limited, sporadic, subsedentary ability" to engage in activities such as taking care of her children, grocery shopping, performing household chores and preparing meals, and other daily activities, noting that she needs "significant support" to engage in these activities. (Pl.'s Br. at 14.) Plaintiff also argues that "sporadically" engaging with counselors and case managers is not equivalent to an ability to sustain a normal eight-hour workday, five days a week, and that the ALJ failed to "acknowledge

the significant support [Plaintiff] receives from her counselors and case managers." (*Id.*) Finally, Plaintiff argues that the ALJ cannot discount Altvatter's opinion as based entirely on self-reports because psychiatric reports necessarily rely on self-reports. (Pl.'s Br. at 14-15, citing *Buck*, 869 F.3d at 1049).

With respect to Plaintiff's argument that the ALJ erred in discounting Altvatter's opinion on the ground that it was based on "comments expressed in session" (Pl.'s Br. at 14-15; *see also* Tr. 715), Plaintiff is correct that "the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *Buck*, 869 F.3d at 1049. However, in *Buck*, as in many subsequent cases citing *Buck*, the mental health evaluators based their opinions on some objective measure in addition to self-reports, such as clinical interviews or mental status evaluations. *See, e.g., id.* ("[The mental health evaluator]'s opinion was based in part on [the claimant]'s self-report that he had trouble keeping a job. However, [the evaluator] also conducted a clinical interview and a mental status evaluation. These are objective measures and cannot be discounted as a 'self-report.'"); *see also Neri v. Comm'r of Soc. Sec.*, No. 1:21-cv-01235-SAB, 2022 WL 16856160, at *16 n.13 (E.D. Cal. Nov. 10, 2022) ("*Buck* . . . is inapposite to the instant matter. In *Buck*, the Ninth Circuit held a court should not reject a psychiatric opinion that is based in part on the patient's self-report, as well as on the clinician's observations, and objective measures such as a clinical interview and mental status evaluation. Here, by contrast, the ALJ not only rejected [the evaluator's] opinion because it relied heavily (rather than in part) upon Plaintiff's and his sister's allegations, but also because the opinion was internally inconsistent as well as inconsistent with Plaintiff's reported activities and the medical record[.]") (citations omitted); *Mona Faye C. v. Comm'r of Soc. Sec.*, No. 121CV00140DCNREP, 2022 WL 16639331, at *6 n.4 (D. Idaho Aug. 22, 2022) ("[I]mportantly,

PAGE 22 – OPINION AND ORDER

*Buck* did not overturn the well-settled rule that a physician's opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted by the ALJ. Instead, *Buck* clarified that an ALJ errs when she relies on a claimant's discredited self-reports to reject the 'objective measures' of a psychologist's evaluation." (simplified) (first citing *Buck*, 869 F.3d at 1049; and then citing *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999))), report and recommendation adopted, 2022 WL 16635577 (D. Idaho Nov. 2, 2022); *Aniya R. v. Comm'r of Soc. Sec.*, No. C21-1159 TLF, 2022 WL 2541100, at *3 (W.D. Wash. June 2, 2022) ("[T]he ALJ did not err in giving little weight to [the examining psychologist's] assessed limitations to the extent they were based on Plaintiff's properly discounted [mental health] symptom allegations.").

In contrast here, Altvatter's opinion clearly reflected that it was based on "comments expressed in session" and not based on Plaintiff's history and medical file, physical examinations, consultative medical opinions, progress and office notes, laboratory reports and other tests, psychological evaluations and reports/opinions, physical therapy reports, or "x-rays, CT scans or MRIs." (*See* Tr. 714, checking only the box "other" and adding "comments expressed in session," and not checking any other boxes in response to the question, "please indicate the items upon which you base the opinions given in this [r]eport"). Unlike *Buck* and its progeny, Altvatter based her report only on Plaintiff's self-reports—not any objective tests—and therefore the ALJ did not err in discounting the opinion on that ground.

Even if the ALJ erred in discounting Altvatter's opinion because it was based on Plaintiff's self-reports, the ALJ also discounted the opinion because it was unsupported by Plaintiff's reported activities and the longitudinal record. (*See* Tr. 25, concluding that Altvatter's

assessed limitations were "completely unsupported by the record and [Plaintiff's] own statements"). For the reasons discussed above, there is substantial evidence in the record that Plaintiff's reported activities contradicted the marked and severe limitations that Altvatter assessed in the check box form. (*See id.* at 712-15.) Further, the ALJ's conclusion that Plaintiff's ability to engage with counselors and case management services to obtain assistance contradicted Altvatter's opinion that Plaintiff is unable to request assistance was supported by substantial evidence in the record. (*See id.* at 25; *see also id.* at 393, 477-78, 596, 701, reflecting that Plaintiff consistently requested and received assistance with obtaining medical and other services for herself, as well as her family).

Although Plaintiff weighs the evidence differently, substantial evidence in the record supports the ALJ's evaluation of Altvatter's opinion and the Court "must uphold" the ALJ's opinion. *See Steirer v. Kijakazi*, No. 22-16792, 2023 WL 6999450, at *1 (9th Cir. Oct. 24, 2023) ("The ALJ did not err. The ALJ evaluated the consistency and supportability of the opinions by weighing each against[, inter alia,] objective clinical findings[.] Based on the ALJ's interpretation of the evidence, she rejected the medical opinions . . . as extreme. Because the record supports her interpretation, we must uphold the ALJ's decision." (simplified) (first citing 20 C.F.R. § 416.920c(a); then quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); then citing *Ford*, 950 F.3d at 1154-55; and then citing *Garrison*, 759 F.3d at 1012)); *Ahearn v. Saul*, 988 F.3d 1111, 1115-16 (9th Cir. 2021) ("When the evidence can rationally be interpreted in more than one way, the court must uphold the [ALJ's] decision." (quoting *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001))); *see also Stanton v. O'Malley*, No. 23-35474, 2024 WL 4224622, at *1 (9th Cir. Sept. 18, 2024) ("An ALJ must assess the persuasiveness of the relevant medical opinions and explain how she considered the supportability and consistency

factors. As to all four physicians, the ALJ sufficiently explained her analysis, and her conclusions are supported by substantial evidence in the record." (first citing 20 C.F.R. § 416.920c(a)-(b); and then citing *Woods*, 32 F.4th at 791-92)).

## V.    LAY WITNESS TESTIMONY

Plaintiff argues that the ALJ erred by failing to articulate any reasons to discount the lay witness testimony provided by Plaintiff's partner. (*See* Pl.'s Br. at 22-32; Pl.'s Reply at 23-29.) Specifically, she argues that the ALJ's statement that he "considered the supportive statements and observations from David [A.] concerning her impairments and associated decreased work capacity when determining the above residual functional capacity" does not rise to the level of a germane reason to discount lay witness testimony. (Pl.'s Br. at 24.).

### A.    Applicable Law

It remains "unsettled whether an ALJ is still required to consider lay witness evidence under the revised regulations." *Apple v. Bisignano*, No. 24-307, 2025 WL 1525314, at *3 (9th Cir. May 29, 2025) (quoting *Crummett v. King*, No. 23-3668, 2025 WL 470890, at *2 (9th Cir. Feb. 12, 2025)); *see also Wilson v. O'Malley*, No. 23-35463, 2024 WL 2103268, at *2 (9th Cir. May 10, 2024) (recognizing that the Ninth Circuit has "not yet addressed whether an ALJ is required to provide germane reasons for discounting lay witnesses under the new regulations"). "[A]ssuming that an ALJ must consider such evidence, '[a]n ALJ need only give germane reasons for discrediting the testimony of lay witnesses.'" *Apple*, 2025 WL 1525314, at *3 (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005)).

However, it is well settled that "[t]he ALJ need not discuss lay witness evidence if it 'is similar to other testimony that the ALJ validly discounted or . . . is contradicted by more reliable medical evidence that the ALJ credited.'" *Clark v. Bisignano*, No. 24-6637, 2025 WL 3539130,

at *2 (9th Cir. Dec. 10, 2025) ("Because the lay witness evidence was similar to [the claimant]'s testimony, and the ALJ provided clear and convincing reasons to discount that testimony, the ALJ did not err in declining to discuss the lay witness evidence." (first quoting *Molina*, 674 F.3d at 1119; and then citing *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009))); *Wood v. Bisignano*, No. 24-6838, 2025 WL 3527450, at *2 (9th Cir. Dec. 9, 2025) (noting that "[t]he parties dispute whether the post-March 27, 2017, social security regulations abrogated prior precedent holding that an ALJ cannot disregard competent lay witness testimony 'without comment' and 'must give reasons that are germane to each witness'" but holding "[w]e need not reach this question" in part because "the ALJ's failure to discuss the lay witness testimony is harmless error" (first citing *Molina*, 674 F.3d at 1114; and then citing *Molina*, 674 F.3d at 1117)); *Putz v. Bisignano*, No. 24-5403, 2025 WL 3012797, at *2 (9th Cir. Oct. 28, 2025) (holding that the court "need not reach [the] question" of "whether the post-March 27, 2017 social security regulations abrogated our prior precedent holding that an ALJ cannot disregard competent lay witness testimony "without comment" and "must give reasons that are germane to each witness'" where "the ALJ satisfied our precedent by finding the testimony of [the claimant]'s sister unpersuasive 'for the same reasons' given for finding [the claimant]'s testimony unpersuasive" (first citing *Molina*, 674 F.3d at 1114; then citing *Molina*, 675 F.3d at1121; and then citing *Valentine*, 574 F.3d at 694)).

## B.    Analysis

The Court concluded above that the ALJ provided clear and convincing reasons to discount Plaintiff's symptom testimony and finds that the ALJ's failure to articulate specific reasons for discounting the similar lay witness testimony was not harmful error. *See Smith v. Bisignano*, No. 24-5118, 2025 WL 2452374, at *2 (9th Cir. Aug. 26, 2025) ("We need not

address whether the ALJ was required to explain how he evaluated lay witness testimony because any error would be harmless. The testimony of these lay witnesses was similar to [the claimant's] own testimony, and so the ALJ's reasonable decision to discount [the claimant's] testimony 'appl[ied] equally well' to the testimony of these lay witnesses." (citing *Molina*, 674 F.3d at 1117)); *Apple*, 2025 WL 1525314, at *3 ("[B]ecause the ALJ 'provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay witness] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay witness] testimony.'" (quoting *Valentine*, 574 F.3d at 694)); *Burns v. Bisignano*, No. 24-4199, 2025 WL 1937448, at *2 (9th Cir. July 15, 2025) ("Because the ALJ gave clear and convincing reasons for discounting [the claimant's] subjective symptom claims, those reasons apply with equal force to discounting the lay witness testimony, which contained similar claims regarding [the claimant's] symptoms." (first citing *Valentine*, 574 F.3d at 694; and then citing *Molina*, 674 F.3d at 1117)); *Finnegan v. Bisignano*, No. 24-3131, 2025 WL 1911155, at *2 (9th Cir. July 11, 2025) ("[S]ince [the lay witness] testimony was consistent with [the claimant]'s own testimony, the ALJ did not err in discounting it." (citing *Molina*, 674 F.3d at 1117)).

For these reasons, the Court finds that the ALJ did not err in evaluating the lay witness testimony.[6]

---

[6] The Court does not address Plaintiff's arguments regarding the ALJ's step five errors because they are derivative of the alleged errors the Court addressed above. *See Clark*, 2025 WL 3539130, at *2 ("[B]ecause the ALJ did not commit harmful error with respect to the medical opinion evidence, [the claimant's] testimony, or the lay evidence, [the claimant] has not shown that the ALJ's RFC assessment or hypothetical posed to the vocational expert was based on a flawed analysis." (first citing *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1176 (9th Cir. 2008); and then citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006))); *Putz*, 2025 WL 3012797, at *2 ("[The claimant]'s arguments concerning the ALJ's assessment of RFC are

**CONCLUSION**

For the reasons stated, the Court AFFIRMS the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence.

**IT IS SO ORDERED.**

DATED this 12th day of January, 2026.

HON. STACIE F. BECKERMAN
United States Magistrate Judge

---

derivative of those we have already rejected. We reject them for the same reasons.") (citation omitted).